IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONTACT TECHNOLOGIES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. |
| CHECON POWDER METAL CONTACTS, | ) |
| LLC and CHECON POWDER METAL | ) |
| PRODUCTS, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Contact Technologies, Inc., by its attorneys, Metz Lewis Brodman Must O'Keefe LLC, files this Complaint.

### PARTIES

1. Plaintiff Contact Technologies, Inc. ("Contact") is a Delaware corporation with a principal place of business at 229 West Creek Road, St. Marys, Elk County, Pennsylvania 15857.

2. Defendant Checon Powder Metal Contacts, LLC ("CPMC") is a Pennsylvania limited liability company with a principal place of business at 600 Industrial Park Road, Kersey, Elk County, Pennsylvania 15846.

3. Defendant Checon Powder Metal Products, LLC ("CPMP") is a Pennsylvania limited liability company with a principal place of business at 600 Industrial Park Road, Kersey, Elk County, Pennsylvania 15846.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter under 18 U.S.C. § 1836(c) with respect to the claim brought under 18 U.S.C. § 1836(b), and under 28 U.S.C. § 1367(a) with respect to the related state law claims asserted hereinafter.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because CPMC and CPMP reside in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

6.  Contact is a producer of a variety of high quality electrical contacts, assemblies, sliding contacts, and brush assemblies for commercial, industrial, and residential electrical equipment.

7.  CPMC and CPMP also manufacture electrical contacts and contact materials that service for commercial, industrial, and residential electrical equipment.

8.  Contact, on the one hand, and CPMC and CPMP, on the other, are thus competitors in the refractory-based electrical contacts industry.

9.  Contact manufactures its electrical contacts by means of powder metallurgy, which entails blending powdered metals and other additives to produce the desired contact, pressing the powder to produce basic contact geometries, and sintering the blended and pressed powder in a high-temperature furnace.

10. As Contact's website indicates, the sintering process "allows the creation of metallurgical bonds between the powder particles and the creation of a 'refractory skeleton' that can be infiltrated or repressed."

11. Over the more than twenty years that it has been manufacturing electrical contacts, Contact has spent considerable time and money developing a highly-specialized and technical design, method, technique, and procedure for sintering electrical contacts.

12. More specifically, Contact has developed a high-temperature sintering furnace that is unique from any other furnace in the industry.

13. Contact's unique sintering process allows its furnaces to reach extremely high temperatures which, in turn, results in a higher quality contact compared to its competitors because its contacts have better resistance and contact.

14. Contact has employed and continues to employ reasonable measures to keep the design of its unique sintering furnace and its component parts secret, including but not limited to restricting access to the drawings for its furnaces and its component parts to certain employees with company-issued passwords only; requiring visitors to its facility to sign a non-disclosure agreement before entering the facility; and requiring the third party who machines the component parts of the furnaces to Contact's specifications to keep those drawings secret.

15. Prior to the fall of 2015, none of Contact's competitors in the electrical contacts industry was aware of or used a high-temperature furnace like Contact's.

16. Contact once employed Marshall Aoli ("Mr. Aoli"), Joseph Caruthers ("Mr. Caruthers"), and Gregory Rieder ("Mr. Rieder").

17. In his position as Plant Manager at Contact, Mr. Aoli was only one of three employees at Contact who had access to its high-temperature furnace drawings and specifications.

18. Mr. Aoli's employment with Contact ended in the fall of 2015.

19. Mr. Caruthers was an employee of Contact's from January 2002, when he was hired as its Field Sales Manager, until September 2015, when he was its Director of Sales and Marketing.

20. While employed by Contact, Mr. Caruthers was exposed to Contact's high-temperature furnace drawings and specifications.

21. Mr. Rieder's employment with Contact ended in December 2016.

22. While employed by Contact, Mr. Rieder was exposed to Contact's high-temperature furnace.

23. All three of these former employees of Contact—Messrs. Aoli, Caruthers, and Rieder—are currently employed by CPMC and/or CPMP who work from the CPMC/CPMP facility located in Kersey, Elk County, Pennsylvania.

24. According to an August 16, 2016 press release issued by Checon Corporation, which is, upon information and belief, the parent company which owns all or substantially all of the membership units of CPMC and CPMP, the CPMC/CPMP facility in Kersey was to be "a new advanced production facility . . . dedicated to the development and manufacture of powder metallurgical contacts" that would "function as a satellite engineering, product, and sales team to Checon's main operations, headquartered in" Massachusetts.

25. According to the press release, Mr. Aoli is responsible for managing the Kersey facility's operations who has "over 20 years of experience engineering and manufacturing electrical contacts."

26. Also according to the press release, Mr. Caruthers acts at the Director of Sales and Marketing for CPMC/CPMP who has "over 35 years serving the industry in various sales and marketing positions."

27. Since Messrs. Aoli, Caruthers, and Rieder joined CPMC/CPMP and the Kersey facility was opened in 2016, CPMC/CPMP is now using a high-temperature sintering furnace that replicates Contact's design to manufacture electrical contacts.

28. Since 2016, CPMC/CPMP has been using in its furnaces the same component part that allows Contact's furnaces to reach the high temperatures from which Contact derives the economic advantage over its competitors in the electrical contacts industry.

29. Upon information and belief, and given the reasonable measures Contact has taken to ensure the secrecy of its trade secrets in its high-temperature sintering furnaces, the only way that CPMC/CPMP could have developed a furnace that is so similar to Contact's is by misappropriating Contact's trade secrets through information that Messrs. Aoli, Caruthers, and Rieder gained during their employment with Contact.

## COUNT I

### Misappropriation of Trade Secrets, 18 U.S.C. § 1836

30. The averments of paragraphs 1 through 29 above are incorporated by reference.

31. Contact has valuable trade secrets in the design of its high-temperature sintering furnace and its component parts.

32. Contact has taken reasonable measures to keep such information secret by restricting access to the drawings for its furnaces and its component parts to certain employees with company-issued passwords only; requiring visitors to its facility to sign a non-disclosure agreement before entering the facility; and requiring the third party who machines the component parts of the furnaces to Contact's specifications to keep those drawings secret.

33. Contact derives independent economic value from its trade secrets not being generally known to, and not being readily ascertainable through proper means by, any other person, as its furnace designs allow it to manufacture a product of the highest quality that gives it a competitive advantage over its competitors in the electrical contacts industry.

34. Contact uses these trade secrets in interstate commerce.

35. CPMC and/or CPMP acquired Contact's trade secrets by employing Messrs. Aoli, Caruthers, and Rieder when it knew and/or had reason to know that one or all of these former Contact employees had acquired Contact's trade secrets by improper means.

36. As a direct and proximate result of CMPC and/or CPMP's misappropriation of Contact's trade secrets, Contact has suffered damages in the form of lost customers and lost profits in an amount in excess of $75,000.00 to be determined at trial.

WHEREFORE, Plaintiff Contact Technologies, Inc. respectfully requests that judgment be entered in its favor and against Defendants Checon Powder Metal Contacts, LLC and Checon Powder Metal Products, LLC and award the following relief: (a) a permanent injunction enjoining Defendants from using or disclosing Plaintiff's trade secrets; (b) monetary damages in an amount in excess of $75,000.00 to be determined at trial; and (c) such further relief as the Court deems proper and just.

## COUNT II

### Misappropriation of Trade Secrets—12 Pa.C.S. §§ 5301 *et seq.*

37. The averments of paragraphs 1 through 36 above are incorporated by reference.

38. Contact has valuable trade secrets in the design of its high-temperature sintering furnace and its component parts.

39. Contact has taken reasonable measures to keep such information secret by restricting access to the drawings for its furnaces and its component parts to certain employees with company-issued passwords only; requiring visitors to its facility to sign a non-disclosure agreement before entering the facility; and requiring the third party who machines the component parts of the furnaces to Contact's specifications to keep those drawings secret.

40. Contact derives independent economic value from its trade secrets not being generally known to, and not being readily ascertainable through proper means by, any other person, as its furnace designs allow it to manufacture a product of the highest quality that gives it a competitive advantage over its competitors in the electrical contacts industry.

41. CPMC and/or CPMP acquired Contact's trade secrets by employing Messrs. Aoli, Caruthers, and Rieder when it knew and/or had reason to know that one or all of these former Contact employees had acquired Contact's trade secrets by improper means.

42. As a direct and proximate result of CMPC and/or CPMP's misappropriation of Contact's trade secrets, Contact has suffered damages in the form of lost customers and lost profits in an amount in excess of $75,000.00 to be determined at trial.

WHEREFORE, Plaintiff Contact Technologies, Inc. respectfully requests that judgment be entered in its favor and against Defendants Checon Powder Metal Contacts, LLC and Checon Powder Metal Products, LLC and award the following relief: (a) a permanent injunction enjoining Defendants from using or disclosing Plaintiff's trade secrets; (b) monetary damages in an amount in excess of $75,000.00 to be determined at trial; and (c) such further relief as the Court deems proper and just.

## COUNT III

### Unfair Competition

43. The averments of paragraphs 1 through 42 above are incorporated by reference.

44. By improperly using and misappropriating Contact's trade secrets, CPMC and/or CPMP have engaged in unfair competition.

45. As a direct and proximate result of CMPC and/or CPMP's improper competition, Contact has suffered damages in the form of lost customers and lost profits in an amount in excess of $75,000.00 to be determined at trial.

WHEREFORE, Plaintiff Contact Technologies, Inc. respectfully requests that judgment be entered in its favor and against Defendants Checon Powder Metal Contacts, LLC and Checon Powder Metal Products, LLC and award the following relief: (a) a permanent injunction

enjoining Defendants from using or disclosing Plaintiff's trade secrets; (b) monetary damages in an amount in excess of $75,000.00 to be determined at trial; and (c) such further relief as the Court deems proper and just.

### JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial on any issue or claim so triable.

Respectfully submitted,

METZ LEWIS BRODMAN MUST O'KEEFE LLC

Date:  June 4, 2018          By:  /s/ Justin T. Barron
                                  Brian T. Must
                                  PA I.D. No. 49657
                                  Justin T. Barron
                                  PA I.D. No. 200394
                                  535 Smithfield Street, Suite 800
                                  Pittsburgh, PA 15222
                                  (412) 918-1100